UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: ~~00-4200-SNOW~~
00-6234-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff,

v.

**TOBY WILLIAM THOMPSON,**

Defendant.
_____/

## OBJECTIONS TO DETENTION ORDER

**COMES NOW**, the Defendant, **TOBY WILLIAM THOMPSON,** and files, this his objections to, and appeal from, the Order of the United States Magistrate Judge in this cause ordering detention, (Exhibit I, Transcript Detention Hearing August 17, 2000) and, pursuant to Rule 4 of the Local Rules of the United States District Court for the Southern District of Florida, Magistrate Rules, and Title 28 USC S. 636 (b)(1)(A) urges this Honorable Court to vacate and set aside said Order and consider the matter de novo, or to order a reasonable bond be set in this cause, and would show for cause as follows:

That the Defendant herein, **TOBY WILLIAM THOMPSON**, was arrested at or around 7:27 p.m. on August 11, 2000 for possession with intent to distribute a quantity of methylenedioxymethamphetamine (MDMA) by agents of the Drug Enforcement Administration. The Defendant was arrested as he attempted to purchase 10,000 units of the said MDMA from an undercover agent of the government. In actuality, however, only 8,198 MDMA pills were actually delivered and $65,000.00 in cash was seized from this Defendant;

After his arrest, the Defendant allegedly admitted that he had been selling MDMA for a period of time, and had purchased, approximately 20 times, from the confidential informant and that he had approximately $30,000 in drug proceeds that he is owed "on the street". He suggested that he had a small amount of MDMA pills at his residence,



$20,000.00 as proceeds from previous transactions, and also had a pistol there.

The agents then secured a search warrant and went to the Defendant's home where they executed the same and seized an amount of MDMA, drug paraphernalia, eleven (11) to twelve (12) ounces of cocaine, several firearms, a test kit for MDMA, steroids, needles and other items . The residence also was occupied by another individual named Anthony Castiglio and the agents admitted that most of the narcotics were found in a "common area" of the apartment.

On a proffer by the Defendant, it was suggested that he was born and raised in Fort Lauderdale, had graduated form Northeast High School, and had a job working as a physical trainer. All of his tax returns were current, and he made approximately $18,000.00 to $20,000.00 a year. It was further proffered that the Defendant had no criminal record whatsoever except for a dismissal of a misdemeanor case in Dade County several years prior, had never missed a court appearance, had ties to the Fort Lauderdale community, and had relatives who were prepared to sign personally and to pledge other property for bond.

All firearms that were found in the house were legal, the Defendant was acting under no disability to posses firearms, and no firearms were involved in the offense of purchase of MDMA.

The Defendant is an honorably discharged, decorated US Air Force veteran. The Defendant has no passport, no aliases, and has not been out of the country except for one time three years prior. He has approximately $2,000.00 to $3,000.00 in a checking account, $1,500.00 in a savings account, some jewelry worth approximately $3,300.00, and a 1998 Honda motorcycle worth $600.00 to $700.00. He further is starting a secondary business for auto detailing which is just beginning. The Pre-Trial Services report (Exhibit II), which was prepared prior to hearing, recommended that he be released on a personal surety bond (PSB) with co-signors and with pre-trial supervision, and made a finding that,

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

although he was viewed as a risk of danger to the community, conditions could be set to address this risk. Unfortunately, the Court, did not address any conditions, nor did the court find in its oral order that no conditions would be reasonable to comfort the court any assure the community other than detention. Furthermore, the Pre-Trial Services report suggested that the Defendant was not a risk of non-appearance and the court confirmed this by its finding at the detention hearing.

Although the government suggested that it was proceeding on both risk of flight as well as danger to the community, the court denied its motion on risk of flight but granted the detention solely on the issue of "danger to the community" which was directly attenuated to the narcotics which were found at the Defendant's residence, and the quantity that was attempted to be purchased. It should be noted here that the Court, as indicated above, in lieu of detention, made absolutely no findings as to conditions that might be appropriate although counsel for the Defendant suggested several that would be able to assuage the risk factor.

Both parties agreed that the potential sentence in this matter was zero to twenty years with no mandatory minimums; however, a dispute arose as to where, on the guidelines, such a sentence might fall; but guidelines, even on the governments assessment, would fall less than eight years. The Defendant is twenty-eight (28) years of age and such a sentence, even if imposed at the highest end of the guideline, would not materially affect the rest of his life.

The Government offered no other evidence to support its position that there were no conditions available to reasonably assure the safety of the community, save and except the crime alleged itself.

It is from the Order of the Court finding that detention was appropriate based solely upon danger to the community that this appeal is taken.

## ARGUMENT

Detention is a condition set aside for a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. US v. Orta 760 F2d 887, 890 (8th Cir. 1995); S.Rep.No.225, 98th Cong., 1st Sess. 6-7, reprinted in 1984 Code Cong. and Ad. News at 3189. See also US v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)

In the instant case, the Court made a finding, based on the facts before it, on an individual who had never been before seriously involved in the criminal justice system, who was a decorated veteran of the United States Air Force at the young age of twenty-eight (28), with significant ties to the community an individuals available to place bond in significant, and legitimate amounts before the Court, that detention was appropriate, even though the standard for detention is significantly higher than the facts in this case would seem to indicate.

The burden which must be met by the Government or the Court to grant detention, and deny pre-trial release on a "dangerousness" ground is "clear and convincing" evidence. US v. Quartermaine, 913 F2d 910 (11th Cir 1990) See also US v. King, 849 F2d 485 (11th Cir 1988); US v. Hurtads 779 F2d 1467 (11th Cir 1985). The Court held in US v. Orta 760 F2d 887 (8th Cir 1985)

> "only if the Government shows, by clear and convincing evidence that no release conditions, or set of conditions imposed ... will reasonably assure the safety of the community...can Defendant be detained before trial; it is insufficient for the Government to show that no release conditions can " guarantee" community safety and defendant's appearance (emphasis added)"

The burden of persuasion, then is clearly and historically, the Government's. US v. Viera, 814 F.Supp 81 (SDFla 1993). See also US v. Williams, 948 F.Supp 692 (EDMich 1996)

4

In US v. Miller, 625 F.Supp 513, (DCKans. 1985) a drug case energizing the ten (10) year presumption of 18 USC 3142(e), the Court noted that it was only the Defendant's burden to produce evidence contrary to the presumption, while the Government remains under the burden of persuading the court, by clear and convincingly evidence that no conditions of release will reasonably assure the safety of any other person and the community. In Miller, detention was denied where the Government failed to produce any testimony that the Defendant would resume his criminal activities of released, and the Defendant's history and personal characteristics, together with the nature and seriousness of the danger posed by his release, did not support detention.

In the Instant case, the Government did not meet its "no conditions will reasonably assure..." burden. The Government did not even try. Moreover, the Court considered none. The mere charge itself was all that was proffered. On the other hand, the Defendant proffered history, ties, lack of criminal past, military service, and family support.

Respectfully, it is the Defendant's position that the Magistrate Judge was incorrect in applying the standard to this Defendant in detaining him. Certainly, the Pre-Trial Services report, as well as all of the Defendant's background urge that a bond be set so that he can appropriately deal with the criminal changes against him while free to discuss, without strictures, with his attorney, responsible defenses herein, one of which, may be entrapment, especially because the informant was permitted to range freely outside the control of agents in this case during the time of this incident. Even if danger is shown "clearly and convincingly", the Court must then determine if the Government has shown that no conditions are available that would alleviate the danger, or comfort the Court that such a danger will not continue. These provisions are amply set forth in Title 18 USC 3142(c). In this particular case, the Defendant has the ability to abide by many such conditions and some were actually suggested to the Magistrate Judge, but there are

5

several more that uniquely apply to this case, and, as suggested by the Pre-Trial Services report, could have been set to address any "risk" that the Court found:

A. Placing him in the custody of any other person, especially his mother who was in court and prepared to post bond;

B. Compel him to maintain the employment that he already enjoyed and to report any change in that employment to Pre-Trial Services;

C. Be compelled to provide urine drops, or breathalyzer samples, on a random basis, in order to assure that he was not utilizing illegal drugs or any alcoholic substances during the time that he is Pre-Trial Services;

D. Compel him to report personally or by telephone, or both, multiple times per week at Pre-Trial Services and to identify any contact he has with law enforcement officers or anything out of the ordinary during those previous periods of time;

E. Abide by specified restrictions on personal associations, places of abode, or special travel restrictions that may not be changed without a subsequent order of court;

F. Avoid all contact with any informants, or any individuals convicted of criminal offenses so that the ability of the Defendant to be connected to such people is greatly restricted.

G. Comply with a curfew;

H. Refrain from possessing any firearms, destructive devices or other dangerous weapons. This particular condition may have been of specific concern to the court because firearms were located in his apartment. A suggestion that he may not have direct, or indirect contact with, or actual or constructive possession of, such items, without revocation, would alleviate that potential problem;

6

- I. Be evaluated for psychological or drug or alcohol dependency, and compel the Defendant to undergo any treatment necessary, or indicated by that evaluation;
- J. Post a personal surety bond, or together with a corporate surety bond, supported by signatures of family members, and real property that would pass a "Nebbia" inspection and to forfeit the same if any of the above conditions were violated;

Unfortunately, with all of these conditions available to the court, and with the recommendations of Pre-Trial Services implicit, the Government and the Court failed to address said specific conditions, failed to weight them and to consider them, and, merely on the basis of the crime itself, ordered the Defendant detained prior to trial. The Defendant continues detained currently despite all of the background above indicated, as well as the fact that he is not pending any other charges any place else in the world, that he is neither on probation or parole for any offense, and that he is a native born citizen of the United States.

The Defendant, then, respectfully urges this Honorable Court, on the basis of the facts and the law herein presented and on the basis of the evidence presented at the detention hearing held in this cause on August 17th, 2000, to vacate and set aside the Order of Detention entered by the Magistrate Judge, and to either (a) grant unto him a de novo hearing within which to assess the Defendants associated risks and to make a de novo finding as to his bondability in this cause; or (b) impose and set a reasonable bond in this cause, whether a personal surety bond, corporate surety bond or a combination of the two, together with any special condition or conditions that will reasonably assure safety of persons or of the community during the time he is pending trial on this matter.

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A.
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to Nancy V. Quinlan, Assistant United States Attorney, 500 Australian Avenue, Suite 400, West Palm Beach, Florida, 33401, on this 22nd day of August, 2000.

Respectfully Submitted,

BOGENSCHUTZ & DUTKO, P.A.
*Attorneys for Defendant*
Colonial Bank Bldg.
Suite 500
600 S. Andrews Avenue
Fort Lauderdale, FL 33301
(954) 764-2500

BY: _____
J. DAVID BOGENSCHUTZ
Florida Bar # 131174

8